## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 38300

| | | |
|---|---|---|
| CAPSTAR RADIO OPERATING COMPANY, a Delaware corporation, | ) ) ) | Coeur d'Alene, April 2012 Term |
| Plaintiff-Respondent, | ) ) | 2012 Opinion No. 80 |
| v. | ) ) | Filed: May 29, 2012 |
| DOUGLAS P. LAWRENCE and BRENDA J. LAWRENCE, husband and wife, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants. | ) ) ) | |
| _____ | ) | |

Appeal from the district court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The order of the district court granting summary judgment is <u>reversed</u> and this case is <u>remanded</u> for trial on remaining easement theories. The district court's decision denying the Motion for Disqualification is <u>affirmed</u> and the district court's ruling that appellants' defenses of laches and statute of limitations were without merit is <u>affirmed</u>. No attorney's fees on appeal are awarded and costs on appeal are awarded to appellants.

Douglas Lawrence and Brenda Lawrence, Coeur d'Alene, appellants *pro se*.

James, Vernon & Weeks, Coeur d'Alene, for respondents. Susan P. Weeks argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This appeal involves a dispute over whether Capstar Radio Operating Company, ("Capstar"), holds an easement over the property of Douglas and Brenda Lawrence. Capstar filed a Motion for Summary Judgment, alleging in the alternative, that an easement existed based on the theory of either an easement by implication, an easement by necessity, or a prescriptive easement. The district court filed its Order granting summary judgment, finding that Capstar holds an easement implied by prior use, an easement by prescription, and an easement by necessity. The Lawrences appealed to this Court, arguing that the district court erred in granting

1

summary judgment because genuine issues of material fact exist. The Lawrences also argue that the district court abused its discretion by failing to recuse itself for alleged bias, and that the lower court erred in determining that the Lawrences' defenses of latches and statute of limitations were meritless.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Appellants, Douglas and Brenda Lawrence, and the Respondent, Capstar, own parcels of property on Blossom Mountain, which is located south of Post Falls, Idaho. The Lawrence parcel is located in the southeast quarter of Section 21, and the Capstar parcel is located just to the east of the Lawrence parcel in the southwest quarter of Section 22. Section 21 lies directly west of Section 22. At one time, both the Lawrence parcel and the Capstar parcel were part of a larger tract of land owned in unity by Harold and Marlene Funk, referred to herein as the "Funk parcel." The Funks purchased the Funk parcel in 1969 which consisted of parts of land in Section 15, Section 21, and Section 22.

In 1966, the General Telephone Company, (the "GTC"), obtained an easement to access its acre of land in Section 22 (not the Capstar parcel) over a private road owned by Wilber Mead that crossed the southwest quarter of Section 21 (Mead's property), then moved south and entered the north half of Section 28[1] where it then turned northeast and entered the southeast quarter of Section 21 (over the Lawrence parcel) and into the southwest quarter of Section 22 (near the Capstar parcel). Mead included a condition that the GTC was to erect and maintain a locked gate on the property. Harold Funk testified that when he and his wife purchased the Funk parcel, the private easement road that was used by the GTC to access its parcel, was the exclusive means of accessing the Funks' property in the southeast quarter of Section 21 and in the southwest quarter of Section 22. In 1972, Mead granted the Funks an easement over the private road which crossed Mead's property in the southwest quarter of Section 21. There is a dispute about whether Funk used the access road prior to Mead granting the easement. Funk testified that, prior to Mead granting the easement, Mead allowed Funk to drive across his property, but Funk wanted to purchase the easement so that any successors in interest would have the same easement access. However, in his affidavit, Mead testified that "[f]rom the gate's construction until the time I granted Harold Funk an easement in 1972, the [GTC] had the only

---

[1] Section 28 lies directly south of Section 21. The owner of Section 28 is not a party to this lawsuit.

other key to this gate. To my knowledge, Harold Funk did not use this gate to access his property."

In 1975, the Funks broke off the Lawrence parcel and sold it to Human Synergistics, Inc., but retained their land in Section 22. The sales agreement to Human Synergistics stated that the "Section 21 parcel was being sold subject to an ingress/egress easement over the existing road on the property that was being sold to Human Synergistics." The contract was a title retaining contract in which the grant of the Lawrence parcel, and any easement over it, was contingent upon the fulfillment of the sales contract. Human Synergistics paid off the contract in 1992 and the Funks issued a warranty deed conveying title to Human Synergistics on October 29, 1992. Funk testified that after the sale, he and his wife continued to use the private easement road in Section 21 to access their property in Section 22. In 1989, the Funks broke off the Capstar parcel and sold part of their Section 22 property to Kootenai Broadcasting, Inc. John Rook, the owner of Kootenai Broadcasting, testified that at the time of the purchase, the private easement road crossing over Section 21 was the only access to its property in Section 22, now the Capstar parcel.

The respective parcels passed through several other hands before either the Lawrences or Capstar purchased them. The chain of title established for the Lawrence parcel is as follows: Funks to Human Synergistics; Human Synergistics to Johnston & McHugh; Johnston & McHugh to N.A.P.; N.A.P. to Farmanian; Farmanian to the Lawrences. The Lawrences purchased their property in 1996. The chain of title established for the Capstar parcel is as follows: Funks to Kootenai Broadcasting; Kootenai Broadcasting to Rook Broadcasting; Rook Broadcasting to AGM; AGM to Capstar. Capstar purchased its parcel in 2000.

From a public road, known as Signal Point Road, Capstar seeks an easement to access its property over an unimproved private road known as Blossom Mountain Road. Signal Point Road lies to the west of the Lawrence parcel. Blossom Mountain Road crosses through the Lawrence parcel before passing near the Capstar parcel. In 2002, the Lawrences questioned Capstar's right to access its property over the portion of Blossom Mountain Road that traversed the Lawrences' property. On November 7, 2002, Capstar filed suit for declaratory and injunctive relief, seeking to have an easement declared based on the following four alternative theories: 1) express easement, 2) easement by implication, 3) easement by necessity, and 4) prescriptive easement. Capstar moved for summary judgment on the four theories and the district court found that Capstar held an express easement over the Lawrence parcel based upon an earlier

3

contract between two other parties. The lower court did not address Capstar's other easement theories. The Lawrences appealed, and this Court vacated the district court's decision, finding that no express easement over the Lawrences' property was retained by Capstar's predecessor in interest, and remanded the case back to the district court. *Capstar Radio Operating Co., v. Lawrence*, 143 Idaho 704, 708, 152 P.3d 575, 579 (2007).

On remand, Capstar renewed its Motion for Summary Judgment on the remaining theories of easement by implication from prior use, an easement by necessity, and a prescriptive easement. The Lawrences subsequently filed a motion to disqualify District Judge Mitchell for cause. The district judge heard evidence and issued a written decision declining to disqualify himself. On February 6, 2008, the district court issued a Memorandum Decision and Order Granting Plaintiff's Motion for Summary Judgment, finding that an easement by implication, or in the alternative, that an easement by necessity, or a prescriptive easement existed over the Lawrences' property. The district court also rejected the Lawrences' defense of laches and statute of limitations as meritless. The Lawrences again appealed, but this Court dismissed the appeal for lack of jurisdiction because there was no separate final judgment entered. *Capstar Radio Operating Co. v. Lawrence*, 149 Idaho 623, 625–26, 238 P.3d 223, 225–26 (2010). The Lawrences then moved the lower court to enter a final judgment, and the district court issued a separate Order Granting Plaintiff's Motion for Summary Judgment and Declaring Easement Rights. On November 10, 2010, the Lawrences properly filed their Notice of Appeal to this Court. The district court entered final judgment on September 15, 2011.

### III. ISSUES ON APPEAL

**1.** Whether the district court erred in granting Capstar's Motion for Summary Judgment?

**2.** Whether the district court abused its discretion by failing to disqualify itself for cause?

**3.** Whether the district court erred in determining that the Lawrences' defenses of laches and statute of limitations were meritless?

**4.** Whether the Lawrences are entitled to attorney's fees on appeal?

### IV. STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion. *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The facts must be liberally construed

4

in favor of the non-moving party. *Renzo v. Idaho State Dep't. of Agric.*, 149 Idaho 777, 779, 241 P.3d 950, 952 (2010).

> When an action will be tried before a court without a jury, the court may, in ruling on the motions for summary judgment, draw probable inferences arising from the undisputed evidentiary facts. Drawing probable inferences under such circumstances is permissible because the court, as the trier of fact, would be responsible for resolving conflicting inferences at trial. However, if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented, then summary judgment is improper.

*Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009) (internal citations omitted).

## V. ANALYSIS

### A. The District Court Erred in Granting Summary Judgment Because Genuine Issues of Material Fact Exist

All the evidence relating to the three easement theories present genuine issues of material fact and these issues were not properly resolved on summary judgment. Summary judgment was not a proper method to dispose of a case with so much conflicting evidence. No request for a jury trial has been made in the case at hand. Although the court, as the trier of fact, may draw the most probable inferences from the undisputed evidence, there are enough genuine issues of material fact to warrant deciding the merits of the case at trial. There is a fine line between drawing the most probable inferences and weighing the evidence, and this Court holds the belief that the district court should have allowed the case to go to trial in order to weigh the conflicting evidence and test the credibility of the witnesses.

#### 1. *Easement by Implication*

"An easement by implication requires a showing of (1) unity of title and subsequent separation by grant of the dominant estate; (2) apparent continuous use of an access; and (3) reasonable necessity for an easement." *Bob Daniels & Sons v. Weaver*, 106 Idaho 535, 542, 681 P.2d 1010, 1017 (1984) (citing *Cordwell v. Smith*, 105 Idaho 71, 77, 665 P.2d 1081, 1087 (Ct. App. 1983)). This doctrine presumes that if an access was in use at the time of severance, such use was meant to continue. *Bob Daniels & Sons*, 106 Idaho at 542, 681 P.2d at 1017. Strict necessity is not required to establish an implied easement by prior use. *Davis v. Peacock*, 133 Idaho 637, 642–43, 991 P.2d 362, 367–68 (1999). The party seeking to establish the easement must prove reasonable necessity. *Id.* "Reasonable necessity is something less than the great present necessity required for an easement implied by necessity." *Id.* at 642, 991 P.2d at 367.

The district court found that Capstar established an easement by implication from prior use. The district court relied on Funk's affidavit testimony to support its finding that after the

5

1975 sale to Human Synergistics, the easement road crossing Blossom Mountain was the only existing road to access the Funks' property in Section 22. The court also found apparent and continuous use of the private easement road to access the Funks' property in Section 22 after the sale of the Capstar parcel to Kootenai Broadcasting in 1989.

This Court agrees that Capstar proved the first element because the Funks originally held the Funk parcel, which included the Lawrence parcel and the Capstar parcel, in unity of title and then subsequently severed the unity when the Funks sold the Lawrence parcel to Human Synergistics. A central question, however, is *when* separation occurred; as such a determination is relevant to how the "apparent continuous use" is measured. In 1975, the Funks entered into a sales contract to sell the southeast quarter of Section 21 (the Lawrence parcel) to Human Synergistics, but retained legal title of the Lawrence parcel until Human Synergistics paid off the contract in 1992. The question of whether separation occurs at the time of a sales contract or whether separation occurs at the time legal title passes is a matter of first impression for Idaho courts. The district court and the parties assumed that 1975 (the date of the sales contract) was the relevant date but did not discuss their rationale for doing so. In deciding this question, we find that the district court and the parties were correct and that it is the creation of a possessory interest that creates the necessary separation. In this, we follow the Washington courts that have found that the "substantial rights in the land" created through the real estate contract create the relevant separation. *Bays v. Haven*, 777 P.2d 562, 564 (Wash. Ct. App. 1989). For instance, generally, a "vendee under a real estate contract has the right to possession of the land, the right to dominion and control of the land, and the right to cultivate and harvest the crops grown on the land." *Id.* If implied easements are based on the presupposition that the parties would not have agreed to this transaction except with some tacit understanding that an easement would exist, that presupposition should arise at the time of the contract as that is when the understanding would arise. *See* 25 AM. JUR. 2D *Easements and Licenses* § 24 ("The basis of the general principle as to the implication of an easement from a preexisting use is the presumed or probable intention of the parties to the conveyance as disclosed by all the circumstances surrounding the transaction.") (Footnotes omitted).

However, the record presents genuine issues of material fact regarding whether the Funks' use of the easement road was apparent and continuous and whether it was reasonably necessary to use the Blossom Mountain access road to reach their property in Section 22. The Lawrences submitted evidence through the affidavit of Bruce Anderson, a Kootenai County

surveyor, testifying that Mellick Road, which was made public in 1910, extended into land owned by the Funks in Section 15 when the Funks took title to their land. Capstar argues that Mellick Road did not extend all the way into the Funks' Section 22 property and that it was not constructed or maintained past its entry point in Section 15. In his deposition, Funk also acknowledged the presence of an old logging road that had been in Section 22 (near the Capstar parcel) at the time he first purchased the Funk parcel in 1969. Funk also testified that the logging road was in poor shape and that he "didn't care to" drive along the road. According to Funk's deposition, the "X" marked on the 1959 Metsker map indicates the location where the logging road was accessible and Funk testified that he could not access his property from the logging road without cleaning out the road first. A property owner cannot create a necessity through his or her own actions. *B & J Dev. & Invs., Inc. v. Parsons*, 126 Idaho 504, 507, 887 P.2d 49, 52 (Ct. App. 1994) (citing *Cordwell*, 105 Idaho at 80, 665 P.2d at 1090).

A dispute exists over whether the Funks could have extended the logging road to Mellick Road in order to access the property in Section 22. Capstar argues that it was impossible for the Funks to connect the logging road with Mellick Road because it meets in the northeast quarter of Section 21, which the Funks did not own. However, the Lawrences argue that the Funks could have redirected the logging road to connect with Mellick Road in their Section 15 property, but chose not to do so. The Lawrences proffered evidence that such a task was possible through the affidavit of Mr. Mack, who connected the old logging road to Mellick Road to access his property in Section 22, which surrounds the Capstar parcel. Although this information is relevant, the record does not disclose the costs or difficulty involved with Mack's connection of the two roads. Without more evidence, it remains unclear whether connecting the logging road with Mellick Road would have been a reasonable task for Funk to perform.

Furthermore, the record presents multiple instances in which witnesses have made contradictory statements regarding material facts. For instance, Funk's deposition testimony is inconsistent with his affidavit testimony regarding the location and formation of the GTC access road. Moreover, Funk's affidavit stated "we continuously utilized the existing road in Section 21 to access our property in Section 22 without interference." Yet when deposed, Funk testified that the uses of the property were huckleberry picking and shooting and that this occurred on an infrequent basis, approximately 20 to 30 times. Further, Mead stated that he had no knowledge of Funk's use of the property. The conflicting testimony presents a genuine issue of material fact regarding whether Funk's use of the easement road was apparent and continuous. In cases where

7

this Court has found apparent continuous use, that finding has been based on use that would have been apparent to the outside world. *Thomas v. Madsen*, 142 Idaho 635, 638, 132 P.3d 392, 395 (2006) (finding use of a driveway apparent); *Akers v. DL White Const., Inc.*, 142 Idaho 293, 302, 127 P.3d 196, 205 (2005) (finding "regular use" to be required); *Davis v. Peacock*, 133 Idaho 637, 641, 991 P.2d 362, 366 (1999) (requiring open and continuous use to "ensure[ ] that the buyer of the servient property will have notice of the preexisting use") (abrogated on other grounds by *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 226 P.3d 1263 (2010)). Assuming that Funk's "continuous" use of the easement road was limited to Funk's infrequent trips for huckleberry picking and shooting practice, it would not likely constitute apparent continuous use. *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 725, 874 P.2d 528, 536 (1994) (finding no apparent continuous use where a well was drilled but not used before separation); *Close v. Rensink*, 95 Idaho 72, 77–78, 501 P.2d 1383, 1388–89 (1972) (finding use of access roads was limited and diminished further after sale); *see also Cordwell*, 105 Idaho at 78, 665 P.2d at 1088 (holding use by other parties to be insufficient to establish apparent continuous use).

Moreover, Rook's deposition testimony contradicts his affidavit testimony regarding Rook's knowledge of Funk's use of the easement road. Due to medication, Rook could not recall the circumstances surrounding the signing of his affidavit and could not verify its accuracy. In his affidavit, Rook testified that "[t]he existing private access road was visible and in use by Funks at the time Kootenai Broadcasting purchased its parcel." During his deposition, when asked how he knew that the Funks were using the private easement road to access their property, Rook replied:

> The only thing – the only answer to that is that's what Bill Gott would have told us – whether Funks used it, I don't know whether Funks had been up on that hill before. I'd never met the man. . . . I'm just assuming that – that's the only road that I knew about and the road we had to go up for several years in and out of there.

This presented the district court with another evidentiary conflict regarding a material fact of whether Funk's prior usage of the access road was apparent and continuous over a number of years and whether Rook had adequate knowledge to testify to that matter. See *Baxter v. Craney,* 135 Idaho 166, 172, 16 P.3d 263, 269 (2000) (stating "it is not proper for the trial judge to assess the credibility of an affiant at the summary judgment stage when credibility can be tested in court before the trier of fact."); *Argyle v. Slemaker*, 107 Idaho 668, 670, 691 P.2d 1283, 1285 (Ct. App. 1984) (holding that even when the court will serve as trier of fact,

credibility determinations "should not be made on summary judgment if credibility can be tested by testimony in court before the trier of fact"). Yet, here, the lower court seems to have weighed the conflicting evidence and judged the affiants' credibility in making a ruling on summary judgment.

### 2. *Easement by Necessity*

"An easement by necessity requires (1) unity of ownership prior to division of the tract; (2) necessity of an easement at the time of severance; and (3) great present necessity for the easement." *Bob Daniels & Sons*, 106 Idaho at 542, 681 P.2d at 1017 (citing *Cordwell*, 105 Idaho at 79, 665 P.2d at 1089). If an alternate access exists, even one which is thought to be expensive or inconvenient, then an easement by necessity must not be granted. *Id.* The district court found that Capstar had proven all the elements of an easement by necessity.

A genuine issue of material fact exists regarding whether it was necessary for the Funks to use the easement road to reach their property in Section 22 when Mellick Road provided legal access to the Funk Parcel in Section 15. The requirements of necessity do not require that there be access to all portions of a parcel or that there be the most convenient access possible. Rather, it simply requires that there be some public access to the parcel. On the record before us, there is an issue of material fact regarding whether the remaining Funk parcel would have retained access via Mellick Road in Section 15. The Lawrences have provided evidence that the portion would still have provided access and, assuming they were successful, such a finding would defeat the required necessity. Nor is it entirely clear how the district court found the easement by necessity over the Lawrences' land when that easement would not, in fact, lead to a public road. As the Lawrences point out, Capstar did not have the legal right to travel over the road in Section 28 and where "land over which the way of necessity is claimed has no access to a public road," no necessity can arise. *Rathbun v. Robson*, 661 P.2d 850, 853 (1983). Therefore, the district court erred in determining this issue on summary judgment because the conflicting evidence presented a genuine issue of material fact regarding whether the evidence proved an easement by necessity.

### 3. *Easement by Prescription*

The trial court's Memorandum Decision and Order Granting Plaintiff's Motion for Summary Judgment is riddled with errors, many of which are pointed out in the Lawrences' briefs and are acknowledged by Capstar. These discrepancies include erroneously spelling the names of material witnesses as well as confusing the legal property descriptions between Section

21 and Section 22. Although most of the district court's errors are harmless, the court made substantial errors in its analysis of whether Capstar established an easement by prescription. Even Capstar admitted that the lower court erred in analyzing the correct period of time to serve as the five year prescriptive period to determine a prescriptive easement. In its brief to this Court, Capstar stated:

> Lawrence correctly notes that the trial court made an error in its ruling regarding the prescriptive period as applied to Funk. The trial court correctly noted that in looking at the prescriptive period it was required to examine the six year period following Funk's sale of the Lawrence parcel to Human Synergistics. Funk owned the entire parcel for a six year period from 1969 to 1975. After selling the Lawrence parcel, he personally used the road from 1975 to 1981, another six year period. The trial court discussed the six year prescriptive as being from 1969 to 1975. **It is clear the trial court became confused regarding the years encompassed in the six year prescriptive use period**. The evidence in the record before the trial court was that after moving to Aberdeen in 1975, Funk only visited the property two or three times and stopped visiting after 1981 . . . .

(Emphasis added).

"In order to establish an easement by prescription, a claimant must prove by clear and convincing evidence use of the subject property that is (1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period of five years." *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006) (quoting *Hodgins v. Sales,* 139 Idaho 225, 229, 76 P.3d 969, 973 (2003)); *see* I.C. § 5-203.[2] The lower court analyzed the requisite elements of a prescriptive easement under the wrong period of time. In explaining its reasoning, the district court stated:

> Lawrences fail to realize that Funk's use of his property and the use he made of the Lawrence property from 1975 to present is not relevant. The uncontradicted evidence is that Funk used the property consistently for the six year period from the day he sold to Human Synergistics to the day he moved from the area. This is one more year than the five years required for the prescriptive use. . . . The use Capstar seeks is no different than the prescriptive use Funks made of the Lawrences' land for that six year period from 1969 to 1975.

The trial court incorrectly determined that the relevant prescriptive period was from 1969 (the time the Funks purchased the Funk parcel) to 1975 (the time the Funks sold the Lawrence parcel to Human Synergistics). This time period is flawed because the Funks were in actual

---

[2] In 2006, Idaho Code section 5-203 was amended to extend the statutory time period from five years to twenty years. However, the twenty year time period does not apply to an easement by prescription acquired prior to the amendment.

possession of the Lawrence parcel during that six year period and a landowner cannot create an easement in his own land. "An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Hughes*, 142 Idaho at 480, 129 P.3d at 1229 (citing *Hodgins,* 139 Idaho at 229, 76 P.3d at 973). In other words, "'an easement is defined as a right in the lands of another, and therefore one cannot have an easement in his own lands.'" *Zingiber Inv., L.L.C., v. Hagerman Highway Dist.*, 150 Idaho 675, 681, 249 P.3d 868, 874 (2011) (quoting *Gardner v. Fliegel*, 92 Idaho 767, 771, 450 P.2d 990, 994 (1969)). Capstar argues that the court's confusion should not invalidate the court's holding because Funk continuously used the easement road from 1975 to 1981. This Court finds Capstar's argument to be meritless because it is inconsistent with Idaho's easement law and it is not supported by the facts.

In 1969, the Funks entered into a sales contract with the Radens to purchase the Funk Parcel consisting of property in Government Lot 3 of Section 15, property in the southeast quarter of Section 21, and property in the southwest quarter of Section 22, except that portion conveyed to the GTC, and took possession of the property. In 1974, the Funks paid off the real estate contract and were given a warranty deed dated April 11, 1974. In 1975, the Funks entered into a sales contract to sell the southeast quarter of Section 21 (the Lawrence parcel) to Human Synergistics, but retained title in the Lawrence parcel until Human Synergistics paid off the contract in 1992. In his deposition, Funk testified that from 1969 to 1975, he made twenty to thirty trips up to Blossom Mountain. In his affidavit, Funk stated that following the 1975 sale of the Lawrence parcel to Human Synergistics, "we continuously utilized the existing road in Section 21 to access our property in Section 22 without interference." Yet, Funk also testified that he moved to Aberdeen in the fall of 1975 and then made only two or three trips to the mountain over the next five years (the relevant time period to establish a prescriptive easement). Funk further testified that he did not go back to the mountain after 1981. Eight years later, in 1989, Funk sold a portion of his property in Section 22 (the Capstar parcel) to Kootenai Broadcasting.

When analyzing the elements required for a prescriptive easement to exist under the correct time period (1975 until 1980), it is difficult to see how the district court could determine that the Funks' use of the easement road was continuous and uninterrupted for a period of five years. The Funks continuously used the private access road over the Lawrence parcel from 1969 until the Funks moved to Aberdeen in 1975. During that time frame, the Funks were in

possession of the Lawrence parcel. However, Funk testified that he only used the road two or three times from 1975 to 1981. Such limited use of the road does not constitute open and continuous use. After 1981, the Funks' use of the easement road over the Lawrence parcel was interrupted and unused for eight years, until the time Funk sold the Capstar parcel to Kootenai Broadcasting in 1989.[3]

This case is highly complex and presents multiple issues of material fact which the lower court should address at trial. The testimony of several material witnesses presented conflicting information and the parties should be cross-examined to determine their credibility. Thus, the district court erred in granting Capstar summary judgment because the case presents multiple issues of material fact that preclude the court from deciding on a motion for summary judgment whether an easement exists.

## B. The District Court Did Not Abuse Its Discretion in Denying the Lawrences' Motion for Disqualification for Cause

The Lawrences filed a Motion for Disqualification for Cause, alleging that District Judge Mitchell was biased or prejudiced against them or their case. In accordance with Idaho Rule of Civil Procedure 40(d)(2), the Lawrences filed an affidavit from their attorney of record at the time,[4] John P. Whelan, stating the grounds for disqualification. The first concern raised by the Lawrences was that Judge Mitchell voluntarily disqualified himself in *Yovichin v. Bush* (CV 2001-2116) in 2001 because of an alleged "personality conflict" with Mr. Whelan, who was counsel for the defense. A copy of the Order for Self Disqualification was attached to Mr. Whelan's affidavit. The Lawrences further argued that the court was prejudiced against Mr. Whelan based on the court's prior rulings in cases where Mr. Whelan was the attorney of record and his clients did not prevail. The Lawrences also asserted that the lower court was biased because Capstar's counsel, Susan Weeks, is a law firm partner with Lee James, who is a friend of

---

[3] Neither has there been a showing of adversity. Idaho courts have applied the notion that "[w]hen one claims an easement by prescription over wild or unenclosed lands of another, mere use of the way for the required time is not generally sufficient to give rise to a presumption that the use is adverse." *Trunnell v. Ward*, 86 Idaho 555, 560, 389 P.2d 221, 224 (1964); *accord Christle v. Scott*, 110 Idaho 829, 831, 718 P.2d 1267, 1269 (Ct. App. 1986). Under such a principle and from the record before this Court, the Lawrences' land appears to qualify as wild and undeveloped lands. Capstar argues that this issue was not raised below and should be deemed waived. We address this issue here because 1) the Lawrences have raised the question of whether any use was permissive and this is part of the legal standard required to show permissiveness and, as such, the issue is fairly encompassed in the question presented to this Court; and 2) because the district court indisputably erred in measuring the prescriptive period from 1969 to 1975, the question of whether the district court's decision should be affirmed must include consideration of the proper legal standard.

[4] At the time the motion to disqualify was filed on June 6, 2007, John P. Whelan was the attorney of record. Mr. Whelan later withdrew as counsel and the Lawrences are currently pro se litigants.

Judge Mitchell, as well as the former president of the Idaho Trial Lawyers Association.[5] Lastly, the Lawrences argued that because they appealed to the Idaho Supreme Court and this Court overturned the district court's original grant of summary judgment on the express easement theory, the lower court's bias and prejudice against the Lawrences has increased as a result of the appeal.

On June 13, 2007, the district court held a hearing on the Lawrences' motion to disqualify. In addition to the aforementioned arguments, the Lawrences raised a new issue at the hearing concerning campaign contributions. The Lawrences argued that Susan Weeks' law firm, of which she is a partner, contributed $1,000 to Judge Mitchell's reelection campaign in the spring of 2006. On June 25, 2007, the district court issued a Memorandum Decision and Order Denying the Motion for Disqualification for Cause in which the court addressed all of the Lawrences' arguments in great detail.

The district court began its analysis by addressing the Lawrences' first concern regarding Judge Mitchell's disqualification in *Yovichin*. The court stated that it had no independent recollection of why the court voluntarily disqualified itself in *Yovichin* in 2001. The Order for Self Disqualification, which was included in the record as an exhibit, did not include any relevant facts of the *Yovichin* case. Therefore, Judge Mitchell investigated facts outside the record to determine why he had previously disqualified himself. However, the court file in *Yovichin* was purged, so Judge Mitchell was left to speculate his motivation for disqualification. The court noted that the Order for Self Disqualification was entered on November 20, 2001, which was Judge Mitchell's first day as a district judge. The court also recalled one lawsuit where Mr. Whelan was the opposing attorney while Judge Mitchell was still acting as an attorney and mentioned that that case was still pending at the time Judge Mitchell was transitioning from serving as an attorney to becoming a district judge. The court explained that this was the most likely reason the court disqualified itself. The court stated its reasoning as follows:

> Self disqualifications in those cases were made to avoid any appearance of bias since just prior to November 21, 2001, the undersigned and one of the counsel in those cases assigned to the undersigned judge were in an adversarial relationship. Those self-disqualifications were only made to cases in which counsel were involved who were opposing adversarial counsel in other cases that were *still passing* which the undersigned was an attorney at the time he became district judge. Those self-disqualifications were made in *several* cases in an effort to

---

[5] Prior to becoming a district judge, John T. Mitchell served as counsel for the Idaho Trial Lawyers Association. On November 16, 2001, four days before becoming a district judge, Leander L. James (Lee James) was substituted for counsel for the Idaho Trial Lawyers Association.

> avoid the appearance of impropriety that would occur when one day the undersigned was your adversarial opponent in a litigated case, and the next day he was assigned to be the judge in another one of your cases.

(Emphasis in original). The court also stated that Mr. Whelan gave no reason to explain why the court might have a "personality conflict" with Mr. Whelan. The court reiterated that it had no bias or prejudice against Mr. Whelan and that any appearance of bias that may have existed in 2001 had been ameliorated with the passage of time.

Next, the court addressed the Lawrences' claim that the court's prior rulings against Mr. Whelan demonstrate bias or prejudice. The court reviewed the previous cases and explained the independent legal basis supporting its conclusions. In its decision, the district court explained that "[j]ust because one side wins does not mean the judge's decision was based upon bias or prejudice against the party who lost or their attorney." The court then addressed the concern that it was biased because of a friendship with a partner of the firm representing the Plaintiff. The court acknowledged that Capstar's counsel, Susan Weeks, works in the same law firm as a friend, Lee James. However, the court also stated that it did not know whether Ms. Weeks and Mr. James are partners in the firm. The Court also explained that while Mr. James is considered a professional friend, Judge Mitchell has not seen Mr. James in any social capacity in the last fourteen months, the last occasion being a fundraiser for child abuse prevention. Furthermore, the court stated that Mr. James' connection to the Idaho Trial Lawyers Association was irrelevant as Judge Mitchell is no longer a member and was unaware that Mr. James was in fact President of the organization.

The court addressed the issue of campaign contributions made by the law firm of Capstar's counsel. The Court states that it had no knowledge of the fact that Ms. Weeks' law firm made a $1,000 contribution to its reelection campaign because of Idaho's non-disclosure policies. Even with this knowledge, the court remained convinced that it was not biased or prejudiced as a result of the donation because Ms. Weeks' firm consists of three attorneys and the identity of the donor was still concealed.

Lastly, the court addressed the Lawrences' concern that the court would be biased against them for appealing to the Idaho Supreme Court. The district court took the time to relieve these concerns and stated:

> This [c]ourt is human. It is quite a different thing to argue that because this [c]ourt committed error, which the Idaho Supreme Court corrected, that this [c]ourt would then hold against Mr. Whelan the fact he prevailed on behalf of his clients on those appeals. Quite the contrary. Mr. Whelan is to be commended for

14

bringing those appeals and having the Idaho Supreme Court correct the mistake. He did the right thing.

The court also explained that it was "neither insulted nor inconvenienced" by the filing of the Lawrences' motion to disqualify, recognizing that it was Mr. Whelan's duty to raise these concerns.

The Lawrences filed a Motion to Reconsider the district court's denial of the Lawrences' motion to disqualify, arguing that the court improperly engaged in independent fact finding outside of the record and speculated the reason for its voluntary disqualification in the *Yovichin* case. The district court reviewed the evidence and denied the Lawrences' Motion to Reconsider. The Lawrences argue on appeal that the district court abused its discretion by failing to recuse itself for cause. The Lawrences claim they have noticed a pattern of favoritism throughout the nine years of litigation and question the court's impartiality. Moreover, the Lawrences also contend that the court erred when it investigated facts outside of the record.

This Court reviews the denial of a motion to disqualify pursuant to Idaho Rule of Civil Procedure 40(d)(2) for an abuse of discretion, and the burden is on the person asserting the court abused its discretion. *Merrill v. Gibson*, 139 Idaho 840, 843, 87, P.3d 949, 952 (2004) (citing *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982)). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008) (citing *West Wood Invs., Inc. v. Acord*, 141 Idaho 75, 82, 106 P.3d 401, 408 (2005)).

A review of the record shows that the district court specifically recognized that disqualification is a matter committed to the court's discretion. "Whether it is necessary for a judicial officer to disqualify himself in a given case is left to the sound discretion of the judicial officer himself." *Bradbury v. Idaho Judicial Council*, 149 Idaho 107, 113, 233 P.3d 38, 44 (2009) (citing *Sivak v. State*, 112 Idaho 197, 206, 731 P.2d 192, 201 (1986)). The court articulated its reasoning for finding that it was not biased or prejudiced against the Lawrences and this Court finds that the district court acted within the bounds of its discretion and reached its conclusion through an exercise of reason. Therefore, this Court affirms the district court's decision not to disqualify itself.

Furthermore, the fact that the district court independently investigated facts outside of the record does not disturb this Court given the context of the inquiry. The Lawrences brought up the *Yovichin* case without any facts or details to help substantiate their claims. In order to truly

consider whether this argument had merit, the court needed to investigate the facts surrounding the voluntary disqualification. This Court concludes that the district court did not err by independently investigating facts that are not relevant to the pending case. *See* I.C. § 1-1802 and § 1-1803. Therefore, the district court did not abuse its discretion by denying the Lawrences' Motion for Disqualification for Cause. Nevertheless, because this case has such a long and complex history, with close to ten years of litigation, this Court believes that a new judge would provide a much needed fresh perspective and would eliminate any concern of bias. Therefore, this Court Orders that the case on remand be assigned to a new district judge.

**C.      The District Court Did Not Abuse Its Discretion by Finding the Defenses of Laches and Statute of Limitations to be Meritless**

In their Answer, the Lawrences raised the defense of statute of limitations and then amended their Answer to include the additional defense of laches. In its Memorandum Decision and Order Granting Plaintiff's Motion for Summary Judgment, the district court found that there was no merit to either defense. Specifically, the lower court found that there was no legal analysis to support the Lawrences' statute of limitations argument, and that the Lawrences failed to prove why Capstar's predecessor's claims should have been perfected through litigation. On appeal, the Lawrences argue that the district court erred in denying their equitable defenses.

"Whether a party is guilty of laches primarily is a question of fact and therefore its determination is within the province of the trial court. The decision to apply laches is committed to the sound discretion of the trial court." *Sword v. Sweet*, 140 Idaho 242, 249, 92 P.3d 492, 499 (2004) (internal citations omitted). Therefore, this Court reviews whether the trial court properly found (1) a lack of diligence by the party against whom the defense of laches is asserted, and (2) that the party asserting the defense was prejudiced. *Id.* (citing *Preservation Coal., Inc. v. Pierce*, 667 F.2d 851, 854 (9th Cir. 1982)).

*1.      The Defense of Laches*

The Lawrences assert that Capstar and its predecessors are guilty of laches because the Lawrences have been prejudiced by having to locate witnesses and find evidence pertaining to an easement claim that originated more than thirty years ago. The Lawrences claim that they have also been prejudiced by the undue delay in Capstar or its predecessors asserting their legal right to the easement. The easement access problem originated from Funk's sale of property to Human Synergistics in 1975. Due to the delay in perfecting title over the easement, the Lawrences were unable to locate any existing company named Human Synergistics and were thus unable to depose the business when this suit began in 2002. The Capstar parcel was owned

by several different businesses before Capstar purchased it, and the Lawrences assert that those predecessors in interest did not perform their due diligence by perfecting a legal right to the easement through litigation and now the Lawrences are prejudiced by the delay.

The district court did not abuse its discretion in denying the Lawrences' defense of laches. The trial court acted within its discretion when it determined that the Lawrences failed to prove why Capstar's predecessor's claims should have been perfected earlier through litigation. It is true that Capstar did not assert its legal right to the easement until the Lawrences' interfered with Capstar's access. However, Capstar and its predecessors believed they had permission to use the road and in fact had been using the road for years prior to this lawsuit. The law does not compel people to perfect all property rights through litigation. In fact, many people acquire property rights through open, notorious, and continuous use of property for a specified period of time. Therefore, the Lawrences have not been prejudiced by the passage of time because prior to the Lawrences denying Capstar access, there was no need to litigate the easement rights.

### 2. The Defense of Statute of Limitations

On appeal, the Lawrences simply assert that Capstar's predecessor's rights to access the easement are "stale and barred by the statute of limitations." The Lawrences do not cite which statute of limitation is serving as a bar to Capstar's easement rights. This Court will not consider the Lawrences' statute of limitations claim on appeal because they failed to support their claim with any relevant legal authority or argument. This Court has consistently held that it will "not consider assignments of error not supported by argument and authority in the opening brief." *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *see also* Idaho App. R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). The Lawrences merely assert that because the easement originated more than thirty years ago, Capstar's claim should be barred by the statute of limitations. Such an assertion, without any legal authority or analysis tied to the facts, is not sufficient. This Court should not have to search the record to find the error on appeal. As such, the Lawrences statute of limitations defense is deemed waived on appeal. Therefore, this Court affirms the district court's ruling finding the defenses of laches and statute of limitations to be without merit.

### D. No Attorney's Fees on Appeal

The Lawrences request attorney's fees on appeal, arguing that Capstar frivolously filed its Complaint "simply to tie this matter up in litigation for years under the expectation of running the Lawrences out of money, energy, and hope." The Lawrences are pro se litigants and did not cite to any specific statutory provision authorizing an award of attorney fees. The Court will not award the Lawrences attorney's fees because this Court has previously held that pro se litigants are not entitled to attorney's fees. *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009).

## VI. CONCLUSION

This Court reverses the district court's order granting summary judgment and remands the case for trial on the remaining easement theories: 1) an easement implied by prior use, 2) an easement by necessity, and 3) a prescriptive easement. The Court affirms the district court's decision denying the Motion for Disqualification for Cause and affirms the court's ruling that the Lawrences' defenses of laches and statute of limitations were without merit. Nevertheless, this Court orders that a new judge shall be assigned to preside over all further proceedings in this case. No attorney's fees are awarded on appeal. Costs on appeal are awarded to the Lawrences.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.