## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 42326

CAPSTAR RADIO OPERATING )
COMPANY, a Delaware corporation, )
                           )
    Plaintiff-Respondent, )
                           )
v. )
                           )
DOUGLAS P. LAWRENCE and BRENDA J. )
LAWRENCE, husband and wife, )
                           )
    Defendants-Appellants. )
                           )

Boise, June 2016 Term

2016 Opinion No. 73

Filed: June 29, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Steven C. Verby, District Judge.

District court determination on easements, affirmed.

Clark & Feeney, LLP, Lewiston, for appellant. Jeremy Carr argued.

James, Vernon & Weeks, PA, Coeur d'Alene, for respondents. Susan P. Weeks argued.

_____

BURDICK, Justice

This case comes to this Court on appeal from the Kootenai County district court's judgment in favor of Capstar Radio Operating Company (Capstar) on its implied easement by prior use and prescriptive easement claims over property owned by Douglas and Brenda Lawrence (the Lawrences). This is the fourth time this case has been up to this Court. Following the last remand, the district court conducted a six-day bench trial, after which it entered its Memorandum Decision and Order granting Capstar an easement over the disputed road on the Lawrences' property. The Lawrences appealed to this Court, arguing, among other things, that the district court's determinations regarding the easement claims were not supported by substantial and competent evidence. We affirm.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

This case began on November 7, 2002, when Capstar filed a complaint seeking to (1) quiet title to an easement, and (2) permanently enjoin the Defendants, Douglas and Brenda Lawrence ("the Lawrences"), from interfering with the easement road that crosses their property.

In its complaint, Capstar alleged that it had an easement through the Lawrences' property on Blossom Mountain Road that allowed it to access its parcel. Capstar asserted it was granted an easement across the Lawrences' property by the Lawrences' predecessors. Capstar set forth four easement theories: (1) Express easement; (2) Implied easement; (3) Easement by necessity; and (4) Prescriptive easement. Capstar moved for summary judgment. The trial court found there was an express easement and granted summary judgment. The Lawrences appealed.

In *Capstar Radio Operating Co. v. Lawrence*, 143 Idaho 704, 152 P.3d 575 (2007) (*Capstar I),* the Idaho Supreme Court held that Capstar did not have an express easement across the Lawrences' property. The matter was remanded for determination as to the other three theories. *Capstar I*, 143 Idaho at 709, 152 P.3d at 580. On remand, Capstar renewed its Motion for Summary Judgment and the trial court again granted summary judgment as to all three of the alternative theories. The trial court also struck the Lawrences' defenses of laches and the statute of limitations. The Lawrences appealed, and in *Capstar Radio Operating Co. v. Lawrence*, 149 Idaho 623, 238 P.3d 223 (2010) *(Capstar II),* the Idaho Supreme Court dismissed the appeal because no final judgment had been entered. A final judgment was then entered and the Lawrences appealed. In *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 283 P.3d 728 (2012) *(Capstar III),* the Idaho Supreme Court held that there were genuine issues of material fact in existence as to all three easement theories. The Court stated that "this case is highly complex and presents multiple issues of material fact which the lower court should address at trial." *Id.* at 421, 283 P.3d at 738. The Supreme Court also affirmed the trial court's decision to strike the affirmative defenses of laches and the statute of limitations and removed the previous judge. *Id.*

On June 11, 2013, a six-day bench trial began. It concluded on June 18, 2013. The trial was combined with *Spectra Site Communications, Inc. v. Douglas and Brenda Lawrence*, Kootenai County Case No. CV -03- 4621, as there were common issues, common witnesses, and the same defendants in each action.

**B. Uncontested Pertinent Facts**

   **1. The Location of the Respective Parcels.**

The Lawrences and Capstar own real property on Blossom Mountain, which is located south of Post Falls, Idaho. The Lawrence parcel is located in the southeast quarter of Section 21, and the Capstar parcel is located to the east of the Lawrence parcel in the southwest quarter of Section 22. Section 21 is directly west of Section 22. Both the Lawrence parcel and the Capstar parcel were part of a larger tract of land that Harold and Marlene Funk once owned. The Funks purchased their parcel in 1969, and it consisted of land in Section 15, Section 21, and Section 22. All of the real property involved in this case is located in Township 50 North, Range 5 West, Boise Meridian, Kootenai County, Idaho.

   **2. Access and History of Ownership**

The district court noted that there was no testimony contesting the following facts, which were established by the admission of exhibits and/or the testimony of the witnesses. Having reviewed the record, we agree. We reiterate the district court's statement of undisputed facts below, in chronological order for ease of understanding.

The only public road providing access to the private easement road, which then accesses all of the real property that is subject to this litigation, is Signal Point Road. This easement road that connects to Signal Point Road has been referred to as Blossom Mountain Road, West Blossom Road, or Ski Hill Road. No testimony was provided that any real property owner or lessee in Section 21 or Section 22 used any other road to access their real estate. The diagram exhibit below, which was admitted at trial, shows the easement road that proceeds from the southwest quarter of Section 21 to the northwest quarter of Section 28 to the Southwest quarter of Section 21 to where the Capstar and Spectra Site properties are located in the southwest quarter of Section 22.

3



The properties involved are either directly or tangentially located near Blossom Mountain, which is approximately two miles as the crow flies from the City of Post Falls, Idaho.

### (a) The General Telephone Property

On July 14, 1966, the General Telephone Company, (GTC), obtained an easement to access an acre of land in Section 22 (not the Capstar parcel) over a private road owned by Glenn D. Blossom and Ethel Blossom that crossed the southwest quarter of Section 21 (Blossom's property), then moved south and entered the north half of Section 28 where it eventually turned northeast and entered the adjacent section in the southeast quarter of Section 21 (over what is now the Lawrence parcel). It proceeded from Section 21 into the southwest quarter of Section 22 (near the Capstar parcel). The easement included a condition that GTC was to erect a swing gate on the property.

In order for GTC to obtain access through Section 28, on August 18, 1966, William C. Ulrich and Edna M. Ulrich granted GTC an easement across their real property in Section 28. The terms of the easement required GTC to construct "two steel swinging type gates." A few months later, on October 16, 1966, GTC bought real property in Section 22 for the purposes of communication transmissions.

### (b) The Funk Property

In 1969, Harold and Marlene Funk entered into a real estate contract to purchase:

Parcel A: Government Lot 3, Section 15;

Parcel B: The Southeast Quarter of Section 21;

Parcel C: Government Lot 4, Section 22;

4

"Southwest quarter, Northwest quarter, and Southeast quarter, Section 22, all in Township 50 North, Range 5 west, Boise Meridian."

Excepted from the property under contract to the Funks was the real property that was previously conveyed in Section 22 to GTC in 1966.

On November 7, 1972, Wilber and Florence Mead and Ethel Blossom conveyed an easement for ingress and egress across the Blossom/Meads' real property for the benefit of all the land the Funks were purchasing.

The Funks decided to sell the bulk of their real property to Human Synergistics in 1975. On July 10, 1975, seven sales agreements were recorded which reflected the contracts for sale of separate parcels of all of the Funk's real property in Section 21 and Section 15 as well as most of the real property in Section 22 except for the Southeast quarter of section 22, which was retained by the Funks.

In each of the seven contracts the language set forth below was included:

> 5. Subject to and including an ingress egress easement over this and adjoining property, in Said Sections 21 and 22 owned by the grantor and including an ingress egress easement over portions of Section 21 heretofore granted to the grantors. Said easement shall be over existing roads until such time as all record owners shall agree to the relocation, improvement and/or abandonment of all or any portions of any roads. This easement is also over similar lands in section 15.

The district court inferred from the lack of evidence presented that at the time these real estate contracts for the purchase and sale of real property were executed, no fulfillment deeds were signed.

The Funks moved out of the area and by 1986 were living in American Falls, Idaho. That same year, Funk applied for a Conditional Use Permit from Kootenai County in order to install and operate an F.M. broadcast transmitter and tower facility for radio station KCDA. He listed the access to the site as using Signal Point Road. The Kootenai County Board of Commissioners approved the conditional use permit and found that: The proposed tower would be 280 feet tall and that the legal requirements for notification of adjacent property owners had been made for this proposed use on the Funks' segregated five-acre parcel.

In 1988, Harold Funk requested another Conditional Use Permit to build a 40-foot tower for microwave and cable television. He listed the "Directions To Site" as using Signal Point Road and then traveling over the gravel dirt road (Blossom Mountain Road). This site was

5

described as being 50 feet by 200 feet and bordering the existing GTC site. The Kootenai County Board of Commissioners found: "4. Access is provided by a private road off the Signal Point Road." They further found that the legal requirements for provision of notice to adjacent property owners were satisfied, and that the demand for conditional use permits for Kootenai County microwave towers had substantially increased.

More than 17 years after the sales agreements with Human Synergistics were signed, on October 22, 1992, the Funks sold their remaining interest in Section 22 to John W. Mack. The Funks subsequently signed a warranty deed in fulfillment of their contract and conveyed the southeast quarter of Section 21 to Human Synergistics. The deed contained language excepting "current year taxes, conditions, covenants, restrictions, reservations, easements, rights and rights of way, apparent or of record." However, the deed failed to formally reserve or except an easement for the benefit of the Funks, their successors, or assigns to provide access to the remaining property in Section 22. All of the real properties owned by the Funks, their successors, or assigns located in the southwest quarter of Section 22 were thus landlocked with no recorded easement.

On September 20, 1996, Arman and Mary Jane Farmanian, entered into a Mutual Agreement Grant of Easement and Quit Claim Deed with John W. Mack. In this agreement it states, "AND WHEREAS, MACK, and MACK'S predecessors in interest have used a preexisting private road traversing the most southeasterly portion of the FARMANIAN PROPERTY to gain access to the MACK PROPERTY. This private road is sometimes known as Blossom Mountain Road (hereinafter referred to as the ACCESS ROAD.)"

#### (c) The Lawrence Property

At trial, Douglas Lawrence testified that he and his wife reviewed and signed a preliminary title commitment. The preliminary title commitment provided notice to the Lawrences that there were at least three claimed ingress/egress easements across the real property the Lawrences were purchasing. Mr. Lawrence also testified he was aware of a private road that was on the real property they were buying. He went on to state that there were exceptions listed on the title commitment and he knew the insurance company was not going to cover claims made by anyone concerning the easements identified.

On October 1, 1996, a Memorandum of Sale Agreement regarding the Lawrences' purchase of 80 acres located in the southeast corner of Section 21 was recorded. A warranty deed

conveying title to the Lawrences was recorded August 27, 1998. The warranty deed provided that the property was "free from all encumbrances except . . . easements of record or in view."

Mr. Lawrence testified that he knew the access road he used did not stop at his property's eastern boundary.

At the time the real property that eventually came into Capstar's possession was conveyed, it was landlocked and had no recorded easement.

### 3. Chain of Title

The essential chain of title of the Lawrence property is: Funks to Human Synergistics; Human Synergistics to Johnson & McHugh; Johnson & McHugh to National Associated Properties ("NAP"); NAP to the Farmanians; and the Farmanians to the Lawrences.

The chain of title of the Capstar property is: in 1989, the Funks severed what is now the Capstar Property from the Funk Property and sold the Capstar Property to Kootenai Broadcasting, Inc. From there, the chain of title to the Capstar Property is as follows: Kootenai Broadcasting, Inc., to Rook Broadcasting; Rook Broadcasting to AGM; and AGM to Capstar. Capstar purchased its property in 2000.

### B. Mellick Road

The Lawrences asserted at trial that Mellick Road, which started and finished north of the Funk Property in 1975, could have been used to provide access to the southwest quarter of Section 22, or the Capstar Parcel. However, the district court found that Mellick Road, as it existed in 1975, did not provide access to any of the Funk Property in Section 21 or 22 without going outside the Funk Property boundaries.

### C. The District Court's Decision and Order

On September 10, 2013, the district court issued its Memorandum Decision and Order, granting Capstar an easement implied by prior use and a prescriptive easement. On May 22, 2014, the court entered a Final Judgment and Decree of Quiet Title and Permanent Injunction to reflect the grant of easement and to enjoin the Lawrences from interfering with Capstar's use or maintenance of the road. The Lawrences timely appealed to this Court.

## II.    ISSUES ON APPEAL

1. Whether the district court erred when it determined that an easement by implication was established.

2. Whether the district court erred when it determined that a prescriptive easement was established.

3. Whether the district court erred in determining that the scope of the easement was for unlimited reasonable use.

4. Whether the district court erred when it enjoined the Lawrences from interfering with Capstar's use or maintenance of the subject road.

## III. STANDARD OF REVIEW

"This Court reviews factual findings made after a trial without a jury for clear error." *Coward v. Hadley*, 150 Idaho 282, 286, 246 P.3d 391, 395 (2010) (citing I.R.C.P. 52(a)). "We will not disturb findings of fact that are supported by substantial and competent evidence, even if there is conflicting evidence." *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009) (quoting *Akers v. D.L. White Constr.*, *Inc.,* 142 Idaho 293, 298, 127 P.3d 196, 201 (2005) (*Akers I* )). Substantial evidence is that which a reasonable trier of fact would accept and rely upon it in determining findings of fact. *Id.* "However, this Court freely reviews the question of whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of an implied easement or a prescriptive easement." *Akers I*, 142 Idaho at 298, 127 P.3d at 201 (quoting *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999)).

## IV. ANALYSIS

The Lawrences assert several assignments of error in this appeal. First, they contend that the district court's determination that Capstar established an easement by prior use was not supported by substantial and competent evidence. Second, the Lawrences argue that the facts do not support Capstar's prescriptive easement claim. Third, the Lawrences assert that the district court erred in determining that the scope of the easement was for unlimited reasonable use. Finally, the Lawrences argue that the district court erred by enjoining them from interfering with Capstar's use of the road. We address each issue in turn below.

### A. The district court correctly determined Capstar has an implied easement by prior use over Blossom Mountain Road on the Lawrences' property.

"An easement by implication requires a showing of (1) unity of title and subsequent separation by grant of the dominant estate; (2) apparent continuous use of an access; and (3) reasonable necessity for an easement." *Capstar III*, 153 Idaho at 416–17, 283 P.3d at 733–34 (quoting *Bob Daniels & Sons v. Weaver*, 106 Idaho 535, 542, 681 P.2d 1010, 1017 (1984). This doctrine presumes that if an access was in use at the time of severance, such use was meant to continue. *Id.*

It is undisputed that the first element, unity of title and subsequent separation, has been met. However, the Lawrences argue that there is insufficient evidence in the record to establish the second and third elements.

1. Apparent and continuous use

With respect to the second element, the Lawrences argue that the district court erred in finding that Capstar did not need to show apparent continuous use prior to separation of the dominant and servient estate to show that the use was intended to be permanent. The Lawrences argue that the district court erred in finding that, based on the language in the purchase and sales agreement, the parties clearly intended to reserve/grant a permanent easement over the subject road. The Lawrences contend that the evidence in the record shows that Funk's use of the road was infrequent and not enough to give notice that the use was intended to be permanent.

The time that is legally relevant to the question of "apparent continuous use" is the time the dominant and servient estates were severed. *Davis*, 133 Idaho at 642, 991 P.2d at 367. That is, the common owner must have used the premises and the system of roadways long enough to show that the roadways were intended to provide permanent access to those lands which are later severed. *Akers I*, 142 Idaho at 302, 127 P.3d at 205.

Here, the relevant time to the question of apparent continuous use was when the Funk property was severed in 1975. The district court, relying on real estate sales agreements signed by the Funks and Human Synergistics, as well as Funk's use of the land, concluded that the apparent continuous use element was satisfied. Specifically, the district court referenced paragraph five of each of the agreements, which states that the transfer of the land to Human Synergistics was "subject to . . . an ingress egress easement over this and adjoining property in Said Sections 21 and 22 owned by the grantor." The district court explained that the agreements established that "the buyer, Human Synergistics, had knowledge of the easement road and the need for the use of the easement by both the buyer and the sellers." With such evidence of intent, the court reasoned there was no need to resort to inferences, presumptions, or legal fiction to imply an easement when the parties' actual intent was proven. We agree.

The basis of the implied easement by prior use doctrine is that "the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration." *The Law of Easements & Licenses in Land* § 4:15 (quoting *Mitchell v. Castellaw*, 246 S.W.2d 163, 167 (Tex. 1952)).

9

Indeed, American Jurisprudence recognizes that "[e]asements implied from prior use are based on the inferred intentions of the parties involved in the severance of the unified estate into the purported dominant and servient estates where the grantor and grantee are presumed to have intended, by viewing the grantor's obvious, continuous, preexisting use of the land in a particular way, to permanently include in the transaction any easement necessary for the continued proper and reasonable enjoyment of either the parcel transferred or the parcel retained." 25 Am. Jur. 2d Easements and Licenses § 22. Thus, "[a]n implied easement arises from a reasonable inference of what the original parties intended; the law thus implies what is necessary to achieve fairness to protect the dominant estate holder from his or her own failure to reserve the easement expressly." 25 Am. Jur. 2d Easements and Licenses § 22.

Consistent with the premise that the focus is on the parties' presumed intent, this Court has rejected an argument similar to the one the Lawrences advance in this case. In *Bird v. Bidwell*, 147 Idaho 350, 352, 209 P.3d 647, 649 (2009), the appellant argued that the district court erred in considering the grantor's subjective intent in determining whether the second element of an implied easement by prior use had been satisfied. The appellant argued that the only inquiry relevant to the second element is whether the use of the road was apparent and continuous for a long period of time prior to the separation of the dominant estate. *Id.* In rejecting that argument, this Court held:

> The second element includes as a necessary consideration the intent of the grantor at the time the dominant estate was separated. The intent to grant or reserve the easement is presumed from apparent continuous use for a long period of time prior to that separation. The easement is 'based on the theory that when someone conveys property, they also intend to convey whatever is required for the beneficial use and enjoyment of that property, and intends to retain all that is required for the use and enjoyment of the land retained.' Because the intent to grant or reserve the easement is a necessary element, there is no logical reason to base the decision solely upon the grantor's presumed intent from prior use and to exclude other relevant evidence of that intent.

*Id.* (internal citations omitted). Thus, evidence of apparent and continuous use does not, in and of itself, create an implied easement. Rather, it is merely evidence of the presumed intent of the parties; more specifically, that the parties intended to create an easement. *Bird* clearly demonstrates that under Idaho law, a trial court may consider other relevant evidence, including language in a sales agreement or deed, to determine the presumed intent of the parties.

10

Here, the district court relied upon language from the sales agreements between the Funks and Human Synergistics to conclude that the parties intended to create an easement over Blossom Mountain Road to access the Capstar parcel in Section 22. There are seven sale agreements between Funk and Human Synergistics in the record, all of which are dated July 10, 1975. Each of the agreements contains a provision that states:

> 5.　　Subject to and including an ingress and egress easement over this and adjoining property in said sections 21 and 22 owned by the grantor and including an ingress and egress easement over portions of Section 21 heretofore granted to the grantors. Said easement shall be over existing roads until such time as all record owners shall agree to relocation, improvement and/or abandonment of all or any portions of any roads. This easement is also over similar lands in Section 15.

Human Synergistics signed each of those sales agreements, and the district court inferred that they were therefore aware of the intent to reserve an easement over the disputed road when they purchased the land from Funk. Funk also testified that when he sold the land to Human Synergistics, he intended for them to be able to access their property" and that he "wanted them to have access every way it took to get in there." The foregoing is substantial and competent evidence that the parties intended to create an easement over the disputed access road. The district court drew this inference from the evidence before it and "[i]t is the province of the trial court to determine . . . the inferences to be drawn from the evidence." *Bird*, 147 Idaho at 352–53, 209 P.3d at 649–50 (quoting *KMST, LLC v. County of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003)). The district court's inference that the parties intended to create an easement over Blossom Mountain Road is reasonable and supported by substantial and competent evidence. Thus, we hold that the district court did not err when it determined that Capstar had an implied easement by prior use over Blossom Mountain Road on the Lawrences' land.

2.　Reasonable necessity

The Lawrences also argue that there was insufficient evidence to show that the easement was reasonably necessary for the proper enjoyment of the dominant estate because there was evidence that Mellick Road could have been used to access his property.

Strict necessity is not required to establish an implied easement by prior use. *Davis*, 133 Idaho at 642–43, 991 P.2d at 367–68. Rather, the party seeking to establish the easement need only prove reasonable necessity, which "is something less than the great present necessity required for an easement implied by necessity." *Id.* at 642, 991 P.2d at 367. "When determining

whether such 'reasonable necessity' existed, a court does not look to the present moment, but instead determines whether reasonable necessity existed at the time the dominant and servient estates were severed." *Akers I*, 142 Idaho at 302, 127 P.3d at 205. Because an implied easement from prior use requires only reasonable necessity, not great present necessity, there is no requirement that the dominant estate be landlocked. *Davis*, 133 Idaho at 643, 991 P.2d at 368.

The district court concluded that the facts were "uncontroverted that the road easement in question was the only access to the real property in the southeast corner of Section 22 at the time of severance in 1975." Consequently, the court held that the easement was reasonably necessary.

Substantial and competent evidence supports the district court's finding that in 1975, the easement road was the only access to the property in the southeast corner of Section 22. Capstar points to the testimony from several witnesses at trial indicating that the disputed road was the only way to access the tower sites, including Capstar's parcel. However, a lot of the testimony Capstar cites to is in reference to years subsequent to 1975, and the relevant inquiry is whether reasonable necessity existed at the time the dominant and servient estates were severed. There was testimony indicating that in 1975, the disputed road was indeed the only access to the tower sites, including the Capstar parcel.

Funk testified that from 1969 until he sold the property in 1975, he accessed the property using Signal Point Road and Blossom Mountain Road. Funk also testified that when he bought the property, there "wasn't a good road out there," referring to the east side of Blossom Mountain going up through Section 22 and in through Section 15. It can be inferred that Funk was referring to Mellick Road.

The Lawrences put much emphasis on this Court's warning in *Capstar III* that Funk could not create a necessity by his own actions and argue that this was exactly what Funk did by failing to develop the logging road that provided access to the property he retained. The Lawrences argue that the district court discredited testimony from Funk, Lawrence, and Ruen that the logging road could have been used or developed to access Funk's property because it was not a developed road at the time of severance. The Lawrences contend that the road does not have to be fully developed to show that the easement over their property was not reasonably necessary. However, the Lawrences cite to no authority to support their arguments, and there was evidence at trial that indicated that Signal Point Road was the only viable access to Funk's property, which is precisely what the district court found.

Furthermore, there was testimony that although an undeveloped logging road may have provided alternative access to the property, it was not safe or feasible to develop the road.

Funk's testimony as to the condition and use of that road was as follows:

FUNK:    Now, I was going to use this road, but it seemed like at that time it was kind of in poor shape.

Q:    You're referring to the logging road just described?

FUNK:    Yeah. But it was a road.

Q:    It was a road?

FUNK:    Um-hmm.

Q:    And did that lead to Blossom Mountain?

. . .

FUNK:    Yes.

Q:    Okay. And that logging road needed some work; it was overgrown?

FUNK:    Yes.

Q:    But it was an existing road at the time you bought the property?

FUNK:    Would you repeat that? I'm sorry.

Q:    That logging road was there when you bought the property, the logging road?

FUNK:    Yes.

Q:    It was just in poor shape?

FUNK:    Yes.

Q:    Okay. And you didn't have occasion to drive along that road?

FUNK:    No, I didn't. I didn't care to.

Later in the deposition, Funk testified again that the logging road was overgrown and that he "had thought maybe on opening [it] up and using it. It was, like I say, overgrown a little and – but I thought maybe I would take a bulldozer and go in and open that up again and come in that way, but… I'm thinking that somebody down here kind of told me I couldn't do that." Funk then testified that he could not access his property via the logging road (Mellick Road), without cleaning the road out with a bulldozer.

Additionally, Darius Ruen, a civil engineer, testified that Mellick Road did not provide access to Funk's property in 1975, despite the fact that a road appeared on a Viewer's Report of the area from the early 1900's. Indeed, Ruen used multiple historical aerial photographs, surveys, and maps to support his expert opinion that Mellick Road was never constructed in its entirety as

13

laid out by the Viewer's Report, and that subsequent extensions to Mellick Road did not provide access to Funk's property or to Blossom Mountain until 2004. The district court relied heavily on this testimony to conclude that Mellick Road did not provide access to the Funk Property in 1975. The district court found that Ruen's testimony was "meticulous, precise, and inherently believable," and "was buttressed by other witness testimony." Thus, the district court adopted Ruen's testimony as being "wholly credible and [found] that the facts to which he testified [were] controlling," which was that Mellick Road did not access the Funk Property in 1975. This testimony supports the finding that Signal Point Road was the only viable access to the subject property at the time of severance.

Consistent with this testimony, Thomas Loudin, who lived off of Mellick Road from 1968 to 1972 and then 1978 until 2009[1], testified that Mellick Road was not developed and did not provide vehicular access all the way to the top of Blossom Mountain between 1969 and 1972, stating that "you couldn't even get a motorcycle up there." He testified that there were "skid trails and haul roads back in there that were all overgrown." In fact, Loudin testified that most of the logging road past his house and going up to Blossom Mountain was so overgrown that "you would have to catch—break limbs off to get up there. Even to walk up through some of them was hard." Finally, Loudin testified that although he could not access the top of Blossom Mountain via Mellick Road, he could access the top of the Mountain over Signal Point Road and up to Blossom Mountain Road. Consistent with this testimony, a USGS map that was prepared in 1981 using an aerial photograph of the property from 1975 shows "a double dashed line, which the legend indicates is an unimproved road, and it shows that [road] terminating at the Stokes' cabin." Loudin testified that the depiction of the road on that map was consistent with his memory of the road as it existed back in that time frame.

Even Mr. Lawrence testified at trial that in a document he submitted to Kootenai County, he indicated that it was his belief that "[f]rom 1966 until present time, access to the properties in Section 22 from Signal Point Road have ALWAYS been through one or more locked gates." (emphasis in original). Lawrence further acknowledged that he had never asserted to the County that access to the tower cites had been through Mellick Road.

Finally, although there is no evidence in the record regarding what it would have cost to develop the logging road at that time to make it a viable access road to Funk's property, there is

_____

[1] Loudin testified that from 1972 until 1978, he went to his home on Mellick Road once or twice a year.

testimony that indicates it would not have been safe or feasible to develop the road. Funk testified that it would have required a bulldozer to clear and develop the road, which demonstrates that the logging road, as it was in 1975, required rather extensive work before Funk could travel across it to get to his property. Additionally, Ruen's testimony at trial suggests that had Funk attempted to use Mellick Road, he may have had to travel through property that he never owned.

The extensive work and effort that may have potentially been required for developing Mellick Road is illustrated by the affidavit of John Mack, who actually did develop Mellick Road around 2002 to reach property on Blossom Mountain that he purchased from Funk. Specifically, Mack averred:

> 9. The property I owned in Section 22 was completely landlocked and I had no means of legal ingress and egress.
>
> 10. I made several attempts to negotiate an easement across the NE 1/4 of Section 28 from Idaho Forest Industries [a portion of Apple Blossom Road]. All attempts failed when I was told that IFI would not give <u>anyone</u> [] access across their property. I then turned my attentions towards Mellick Road.
>
> 11. The property to the north of me was owned by Fred Zuber. I made an agreement with Mr. Zuber, whereby I agreed to reconstruct the road leading down the north face of Blossom Mountain. Over the years, the road had been completely abandoned. It did not appear that anyone had used the road for nearly 20 years. The road was rough and over grown. There were trees over 20 feet tall growing in the road. I used my bull dozer to reconstruct the road.
>
> 12. As part of my agreement with Fred Zuber, I was also obligated to put 4 inches of gravel on the roadway as part of our agreement. During the construction I began realizing the costs involved with graveling a road over a mile long and decided instead to purchase the Zuber property.
>
> 13. In September of 2002, I purchased 80 acres from Fred Zuber. This property is described as the East half of the Northwest 1/4 of Section 22. I essentially had to buy my access to the property the Funks conveyed to me.
>
> 14. In 1994, when I discussed the access issue with Mr. Funk, he told me and I quote "if the Wilber Mead access doesn't give you legal access, then I guess you probably don't have access. You'll just have to deal with it."
>
> 15. If I didn't have access in 1992, then Capstar certainly didn't have it in 1989 or more, today.

Additionally, Ruen testified that developing Mellick Road to reach the top of Blossom Mountain would have been unsafe:

Q: Mr. Ruen. . . is there a reason somebody through the years didn't just take this little curve in the road here in government lot 3 of section 15 and directly connect it and stay within government lot 3 of section 15 and not swing around into 16?

A: Yeah, it's -- that's going right down the face of the ridge, and the contours there are 20 percent; right at the end it's about 30 percent slope. So in order to go that way you would have a very steep roadway or you would have a very significant cut to get to a grade that you could traverse.

Again, it's going around the face of a ridge to come up the draw or come up the drainages.

Q: Is a 20 to 30 percent grade a safe grade?

A: It's not for a public road. Certainly a 30 percent grade would be a very inappropriate grade for a public roadway.

Q: For any road or just for a public road?

A: I wouldn't design a road for 30 percent grade.

Q: Okay. Why wouldn't you?

A: It's inappropriate. It's too steep and it's not. . .

Even if the logging road could have been used to access Funk's property in its undeveloped state, this Court has held that there is no requirement that the dominant estate be landlocked because an implied easement from prior use requires only reasonable necessity, not great present necessity. *Davis*, 133 Idaho at 643, 991 P.2d at 368. We reiterate that it is within the province of the trial court "to determine . . . the inferences to be drawn from the evidence" and "to weigh conflicting evidence and to judge the credibility of witnesses." *Bird*, 147 Idaho at 352–53, 209 P.3d at 649–50; *Miller v. Callear*, 140 Idaho 213, 216, 91 P.3d 1117, 1120 (2004). Thus, it was within the province of the district court in this case to weigh the evidence, judge the credibility of witnesses, and draw reasonable inferences to determine whether the disputed road was reasonably necessary. The foregoing evidence is substantial and competent evidence to support the district court's conclusion that the easement road was reasonably necessary. Therefore, we hold the district court did not err in making that determination.

Based on the foregoing, we hold that the district court did not err in determining that Capstar has an easement by prior use over Blossom Mountain Road as it passes through the Lawrence parcel. Because we hold that the district court did not err in determining that an implied easement by prior use was established, we do not reach the prescriptive easement issue. Therefore, we turn to the issue regarding the scope of the implied easement.

16

**B. The district court correctly determined that the scope of the implied easement was for unlimited reasonable use.**

The Lawrences argue that the district court erred in ruling that the scope of the easement was for unlimited reasonable use. Instead, the Lawrences urge this Court to hold that the proper scope of an implied easement is limited to the historical use of the easement that existed at the time the easement was created.

The district court rejected this argument and instead held that the scope of the easement is one of unlimited reasonable use. The court concluded that "as long as the use of the easement is reasonably necessary to provide access to the properties and tenants in Section 22, there are no strictures on such use and this court declines the invitation to impose restrictions at this stage of the proceedings." We agree. In *Gray v. Gore*, 119 Idaho 425, 426, 807 P.2d 643, 644 (1991), this Court held that an implied easement entitles the easement's owner to reasonable use of that easement. Thus, we hold that the district court correctly determined that the scope of the implied easement by prior use is for unlimited reasonable use.

**C. The Lawrences waived the issue of whether the district court erred in enjoining the Lawrences from interfering with Capstar's use or maintenance of the subject road.**

Although the Lawrences identified as an issue on appeal whether the district court erred when it enjoined the Lawrences from interfering with Capstar's use or maintenance of the subject road, the Lawrences did not provide any argument or authority on the issue. This Court has held that it will not consider an issue not "supported by argument and authority in the opening brief." *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *see also* Idaho App. R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon."). "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). "Consequently, to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived." We hold that the Lawrences waived this issue because they did not provide any argument or authority on the issue.

As mentioned above, because we affirm the district court's determination that Capstar has an implied easement by prior use over Blossom Mountain Road on the Lawrence parcel, we do not reach the issue on appeal regarding the prescriptive easement claim.

## V. CONCLUSION

We affirm the district court's determination that: (1) Capstar has an implied easement by prior use over the Lawrence property; (2) the scope of the implied easement by prior use is for unlimited reasonable use; and (3) the Lawrences are enjoined from interfering with Capstar's use and maintenance of the subject road. Costs on appeal to Capstar.

Chief Justice J. JONES and Justices EISMANN, W. JONES and KIDWELL, J. Pro Tem, CONCUR.